**IN THE UNITED STATES COURT OF APPEALS
FOR THE ELEVENTH CIRCUIT**

---

**14-14200-AA**

---

**KEITH DAVIDSON,**

**Plaintiff-Appellant,**

**v.**

**CAPITAL ONE BANK (USA), N.A.;**

**Defendant-Appellee.**

---

Appeal from the United States District Court for the
Northern District of Georgia, Atlanta Division,
Hon. William S. Duffy, Jr., presiding

Case No. 1:13-CV-2307-WSD-ECS

---

**APPELLANT'S OPENING BRIEF**

---

Daniel A. Edelman                     E. Talley Gray
Cathleen M. Combs                     3449-E Lawrence-Suwanee Road
Catherine A. Ceko                     Suwanee, GA 30024
EDELMAN, COMBS, LATTURNER             (678) 428-4868
        & GOODWIN, LLC
20 S. Clark Street, 15th Floor
Chicago, IL 60603
(312) 739-4200
(312) 419-0379 (FAX)

---

**ORAL ARGUMENT REQUESTED**

*Davidson v. Capital One Bank (USA), N.A.*; 14-14200-AA

## <u>CERTIFICATE OF INTERESTED PERSONS</u>

The undersigned counsel of record certifies that the following listed persons and entities as described in the fourth sentence of Rule 28.2.1 have an interest in the outcome of this case. These representations are made in order that the judges of this court may evaluate possible disqualification or recusal.

The following is a complete list of all persons, associations of persons, firms, partnerships, corporations, guarantors, insurers, affiliates, parent corporations, or other legal entities who or which are financially interested in the outcome of the litigation, together with law firms and counsel in the case.

1. Burr & Forman LLP

2. Capital One Bank (USA), N.A., Defendant-Appellee

3. Ceko, Catherine A., Counsel for Plaintiff-Appellant

4. Combs, Cathleen M., Counsel for Plaintiff-Appellant

5. Davidson, Keith, Plaintiff-Appellant

6. Duffey, Jr., William S. (District Court Judge, N.D. Georgia, Atlanta Division)

7. Edelman, Combs, Latturner & Goodwin, LLC

8. Edelman, Daniel A., Counsel for Plaintiff-Appellant

9. Grey, E. Talley, Counsel for Plaintiff-Appellant

10. Scofield, III, E. Clayton (Magistrate Judge, N.D. Georgia, Atlanta Division)

11. Threadcraft, Joshua H., Counsel for Defendant-Appellee

12. Ziemann, Jennifer E. Counsel for Defendant-Appellee

i

## <u>REQUEST FOR ORAL ARGUMENT</u>

Oral argument would be helpful to explore the ramifications of a decision concerning what transactions are subject to the Fair Debt Collection Practices Act which is (1) inconsistent with the great weight of authority, (2) inconsistent with the decision of the Magistrate Judge in the same case, and (3) as explained herein has serious consequences for other persons and industries, which do not appear to have been considered by the District Judge.

# TABLE OF CONTENTS

CERTIFICATE OF INTERESTED PERSONS ........................................................i

REQUEST FOR ORAL ARGUMENT ................................................... ii

TABLE OF CONTENTS......................................................... iii

TABLE OF AUTHORITIES .....................................................iv

JURISDICTIONAL STATEMENT .........................................................1

ISSUES PRESENTED FOR REVIEW ....................................................2

STATEMENT OF THE CASE..................................................................3

STATUTE AT ISSUE ...............................................................5

STATEMENT OF FACTS ....................................................................7

SUMMARY OF THE ARGUMENT ....................................................12

ARGUMENT ..............................................................................14

    I.     Standard of Review ...............................................................14

    II.    The Issue is Not One of First Impression in this Circuit or Elsewhere, and the District Court's Opinion is Contrary to the Weight of Authority………..........................................................14

        A.     *Kimber v. Federal Financial Corp.* ...........................................14

        B.     Subsequent Decisions………......................................................15

        C.     Administrative Interpretation ...................................................21

        D.     Congressional Acquiescence.....................................................24

        E.     The Definition of "Debt Collector" is Ambiguous ...................25

III.    Capital One "Regularly" Acquires and Collects Delinquent Debts…………………………………………………………..…....…26

IV.    The District Court's Decision is Incorrect…………...............................30

    A.    The District Court's Reading is Both Underinclusive and Overinclusive . ...........................................................................30

    B.    Congress Was Not Attempting to Define Two Distinct Groups……. ...............................................................................34

    C.    The District Court's Reading Makes Substantial Portions of the Definition Meaningless ...............................................................36

V.    The Ninth Circuit *Schlegel* Decision is Incorrect………....................40

VI.    Conclusion………....................................................................................42

CERTIFICATE OF SERVICE ...................................................................44

TYPE VOLUME CERTIFICATION ...................................................................45

APPENDICES ...................................................................46

# TABLE OF AUTHORITIES

## *Cases*

*Admiral Ins. Co. v. Weitz & Luxenberg, P.C.*, No. 02 Civ. 2195(RWS),  2002 WL

    31409450 (S.D.N.Y., Oct. 24, 2002) ....................................................................38

*Anderson v. Deutsche Bank Nat'l Tr. Co.*, 1:11cv4091, 2012 WL 3756512

    (N.D.Ga. Aug. 6, 2012), adopted, 2012 WL 3756435 (N.D.Ga., Aug. 27, 2012)

    ........................................................................................................... 17, 38

*Bates v. Novastar/ Nationstar Mortgage LLC*, 1:08cv1443, 2008 WL 2622810

    (N.D.Ga., June 24, 2008) ........................................................ 17, 20, 38

*Boston Ins. Co. v. Gable*, 352 F.2d 368 (5th Cir. 1965) ..........................................28

*Bridge v. Ocwen Federal Bank, FSB*, 681 F.3d 355 (6th Cir. 2012).......... 16, 20, 38

*Cacace v. Lucas*, 775 F.Supp. 502 (D.Conn. 1990) .................................................28

*Chevron, U.S.A., Inc. v. Natural Resources Defense Council, Inc.,* 467 U.S. 837

    (1984) ..................................................................................................19

*Cirkot v. Diversified Systems*, 839 F.Supp. 941 (D.Conn. 1993) ...........................18

*Deutsche Bank Trust Co. Americas v. Garst*, 989 F.Supp.2d 1194 (N.D.Ala. 2013)

    ........................................................................................................... 17, 38

*Doe v. Pryor*, 344 F.3d 1282 (11th Cir. 2003).......................................................14

*Dolan v. Fairbanks Capital Corp.*, 03cv3285, 2008 WL 4515932 (E.D.N.Y., Sept.

    30, 2008)................................................................................. 16, 20, 39

Durkin v. Equifax Check Servs., 00 C 4832, 2002 WL 31426397 (N.D.Ill., Oct. 24, 2002)..........................................................................................................18

*FTC v. Check Investors*, 502 F. 3d 159 (3d Cir. 2007)") .................... 19, 20, 21, 22

*Goldstein v. Hutton, Ingram, Yuzek, Gainen, Carroll & Bertollotti*, 374 F.3d 56 (2d Cir. 2004) ................................................................................................. 26, 27

*Goodlin v. Medtronic, Inc.*, 167 F.3d 1367 (11th Cir. 1999)..................................41

*Johnson v. Americredit Financial Services, Inc.*, No. 3:08-0405, 2009 WL 2929396 (M.D.Tenn. Sept. 8, 2009) .......................................................... 17, 31

*Kimber v. Federal Financial Corp.*, 668 F.Supp. 1480 (M.D.Ala. 1987)...... passim

*Kozak v. Hillsborough County, Fla.*, 644 F.3d 1347 (11th Cir. 2011)....................36

*Kuria v. Palisades Acquisition XVI, LLC*, 752 F.Supp.2d 1293 (N.D.Ga. 2010) ..19, 20

*LeBlanc v. Unifund CCR Partners*, 601 F.3d 1185 (11th Cir. 2010) ......................19

*Lefrak Organization, Inc. v. Chubb Custom Ins. Co.*, 942 F.Supp. 949 (S.D.N.Y. 1996)..........................................................................................................25

*Marisco v. NCO Financial Systems, Inc.,* 946 F.Supp.2d 287 (E.D.N.Y. 2013) ....39

*McKinney v. Cadleway Props., Inc.*, 548 F.3d 496 (7th Cir.  2008)…….16, 18

*Midland Funding, LLC v. Giraldo*, 39 Misc.3d 936, 961 N.Y.S.2d 743 (Dist. Ct. 2013)..........................................................................................................19

*Monroe v. CitiMortgage, Inc.*, No. 8:07cv0066-SCB-TGW, 2007 WL 15601904

    (M.D.Fla. May 29, 2007) ........................................................................ 18, 20, 38

*Musudi v. Ford Motor Credit Co.*, 07cv1082, 2008 WL 2944643 (E.D.N.Y., July

    31, 2008) ........................................................................................................31

*Oppong v. First Union Mortgage Corp.,*  407 F.Supp.2d 658 (E.D.Pa. 2005), *aff'd*

    *in relevant part*,  215 Fed.Appx. 114 (3d Cir. 2007) ...........................................26

*Perry v. Stewart Title Co.*, *supra,* 756 F.2d 1197 (5th Cir. 1985) ................... 15, 19

*Pollice v. Nat'l Tax Funding*, 225 F.3d 379 (3d Cir. 2000) ....................................19

*Prickett v. BAC Home Loans*, 946 F.Supp.2d 1236 (N.D.Ala. 2013) ............. 18, 38

*Raffles v. Wichelhaus*, 2 H. & C. 906, 159 Eng.Rep. 375 (Ex. 1864) ....................39

*Reese v. Ellis, Painter, Ratterree & Adams, LLP*, 678 F.3d 1211, 1217-18 (11th

    Cir. 2012) .............................................................................................42

*Robinson v. Nationstar Mortgage, LLC*, 2:12cv718, 2012 WL 5596421 (S.D.Ohio,

    Nov. 15, 2012) .........................................................................................39

*Ruth v. Triumph P'ships*, 557 F. 3d 790 (7th Cir. 2009) ................................. 18, 22

*Saxbe v. Bustos*, 419 U.S. 65 (1974) ......................................................................33

*Schlegel v. Wells Fargo Bank, N.A.*, 720 F.3d 1204 (9th Cir. 2013) ............... 21, 40

*Schlosser v. Fairbanks Capital Corp.*, 323 F.3d 534 (7th Cir. 2003)  .12, 15, 16, 19,

    20, 21, 38

*Serna v. Law Office of Joseph Onwuteaka, P.C.,* 732 F.3d 440 (5th Cir. 2013).....34

*Silva v Mid-Atlantic Mgmt. Corp.*, 277 F Supp 2d 460 (E.D.Pa. 2003) .................28

*Stojanovski v. Strobl & Manoogian, P.C.*, 783 F.Supp. 319 (E.D.Mich. 1992)......27

*Suesz v. Med-1 Solutions, LLC*, 757 F.3d 636 (7th Cir. 2014) ...............................40

*Thompson v. Diversified Adjustment Service, Inc.*, No. H-12-922, 2013 WL
    2973976 (S.D.Tex., July 31, 2013) .......................................................................33

*Tragianese v. Blackmon,* 993 F.Supp. 96 (D. Conn. 1997)....................................28

*Wadlington v. Credit Acceptance Corp.*, 76 F.3d 103 (6th Cir. 1996)...................17

*Williams v. Edelman*, 408 F.Supp.2d 1261 (S.D.Fla. 2005)...................................18

*Zirogiannis v. Dreambuilder Investments*, 782 F.Supp.2d 14 (E.D.N.Y. 2011)....18,
    20

*Zortman v. J. C. Christensen & Associates, Inc.*, 819 F.Supp.2d 874 (D.Minn.
    2011)......................................................................................................................39

## *Statutes*

15 U.S.C. §1692a .....................................................................................................5

15 U.S.C. §§1692a(4) ...................................................................... 14, 22, 32

15 U.S.C. §1692a(6) ........................................................ 13, 14, 15, 22, 30, 35, 40

15 U.S.C. §1692a(6)(F) ........................................................... 30, 31, 32, 34

15 U.S.C. §1692a(6)(F)(iii) ....................................................... 17, 36, 37

15 U.S.C. §1692a(6)(F)(iv)...................................................................36

15 U.S.C. §1692g ...................................................................................40

15 U.S.C. §1692g(a)(4) ........................................................................33

15 U.S.C. §1692i ...............................................................................39

15 U.S.C. §1692k .................................................................................1

28 U.S.C. §1291 ...................................................................................1

28 U.S.C. §1331 ...................................................................................1

28 U.S.C. §1337 ...................................................................................1

Dodd-Frank Act, § 1021(a), 12 U.S.C. 5511(a) ...............................21

Fair Debt Collection Practices Act, 15 U.S.C. §1692 *et seq.* ........................ passim

Pub.L. 101-73, Title VII, § 744(n), Aug. 9, 1989, 103 Stat. 440 ...........................24

Pub.L. 102-242, Title II, § 212(e), Dec. 19, 1991, 105 Stat. 2301 .........................24

Pub.L. 102-550, Title XVI, § 1604(a)(8), Oct. 28, 1992, 106 Stat. 4082 ..............24

Pub.L. 104-208, Title II, § 2305(a), Sept. 30, 1996, 110 Stat. 3009-425 ...............24

Pub.L. 104-88, Title III, § 316, Dec. 29, 1995, 109 Stat. 949 .................................24

Pub.L. 109-351, Title VIII, § 802, Oct. 13, 2006, 120 Stat. 2006 ..........................24

Pub.L. 111-203, Title X, §1089(2), July 21, 2010, 124 Stat. 2092 ........................24

Pub.L. 95-473, § 3(b), Oct. 17, 1978, 92 Stat. 1466 .................................................24

Pub.L. 95-630, Title V, § 501, Nov. 10, 1978, 92 Stat. 3680 .................................24

Pub.L. 98-443, § 9(n), Oct. 4, 1984, 98 Stat. 1708 .................................................24

S. Rep. No. 95-382, 95th Cong., 1st Sess. 3, reprinted in 1977 USCCAN 1695,

1698 ..................................................................................................15

## *Other Authorities*

2013 FDCPA Annual Report, p. 14 n. 14 .............................................................24

Annual Report on SEC Form 10-K of Capital One Financial Corporation for year

    ending December 31, 2011 ............................................................. 9, 10

Annual Report on SEC Form 10-K of Capital One Financial Corporation for year

    ending December 31, 2012 ....................................................................9

Federal Trade Commission report, *The Structure and Practices of the Debt Buying*

    *Industry*," http://www.ftc.gov/os/2013/01/debtbuyingreport.pdf ........................10

FTC Report, *Collecting Consumer Debts: The Challenges of Change*, p. 5 (2009)

    .............................................................................................................21

FTC Report, *Repairing a Broken System: Protecting Consumers in Debt*

    *Collection Litigation and Arbitration,* p. 6 n. 15 (2010) ......................................22

http://files.consumerfinance.gov/f/201303_cfpb_March_FDCPA_Report1. pdf ...24

http://www.ftc.gov/opa/2004/12/camco.htm ...........................................................23

January 30, 2013 FTC report, *The Structure and Practices of the Debt Buying*

    *Industry*," at pp. 3-4 ...........................................................................21

Report on Form 8-K of Capital One Financial Corporation dated August 12, 2011

    and exhibits thereto ................................................................................9

S&P/Experian Consumer Credit Default Indices ...................................................10

Webster's New World College Dictionary, 4th Ed. (accessed January 12, 2014)...37

www.ftc.gov/bcp/workshops/debtcollection/dcwr.pdf............................................22

www.ftc.gov/news-events/press-releases/2014/07/court-halts-debt-collectors-

operations-freezes-assets; and www.ftc.gov/news-events/press-releases/2013/01

/ftc-action-leads-shutdown-texas-based-debt-collector-allegedly........................35

www.ftc.gov/os/2010/07/debtcollectionreport.pdf...................................................22

www.ftc.gov/os/2013/01/debtbuyingreport.pdf......................................................21

## JURISDICTIONAL STATEMENT

This action was brought under the Fair Debt Collection Practices Act, 15 U.S.C. §1692 *et seq.* ("FDCPA"). The district court had jurisdiction under 15 U.S.C. §1692k, 28 U.S.C. §1331, and 28 U.S.C. §1337. This Court has jurisdiction under 28 U.S.C. §1291.

Plaintiff Keith Davidson filed his complaint (Dkt. #1) against defendant Capital One Bank USA, N.A. ("Capital One") on June 11, 2013 and his amended complaint on September 12, 2013 (Dkt. #13).

Capital One moved to dismiss, asserting that it was not a "debt collector" subject to the FDCPA. Magistrate Judge Scofield recommended that the motion be denied, on the ground that the amended complaint alleged that Capital One was a debt collector. (Report and Recommendation, Dec. 11, 2013, Dkt. #32, R. 8-21) Upon review, District Judge Duffy rejected Magistrate Judge Scofield's recommendation and granted the motion, holding that on the facts alleged, Capital One was not a debt collector. (Opinion and Order, August 18, 2014, Dkt. #44, R. 22-49 ) Judgment in favor of Capital One was entered on the same day. (Dkt. #45, R. 51)

Plaintiff timely filed a notice of appeal on September 16, 2014. (Dkt. #46)

Plaintiff asks that the judgment of dismissal be reversed and that the case be remanded for further proceedings.

1

## ISSUES PRESENTED FOR REVIEW

I.     Is a bank which, as part of its usual business activities, acquires over $1 billion in charged-off debts a "debt collector" within the Fair Debt Collection Practices Act with respect to such charged-off debts?

II.    Did the District Court erroneously construe the Fair Debt Collection Practices Act in such a manner that numerous activities previously considered within the letter and purpose of the FDCPA are excluded from it, while numerous businesses previously considered not within the letter or purpose of the FDCPA are now "debt collectors?"

## STATEMENT OF THE CASE

Plaintiff Keith Davidson brought this action against defendant Capital One Bank USA, N.A. ("Capital One") on June 11, 2013.  Plaintiff filed an amended complaint on September 12, 2013 (Dkt. #13).   Plaintiff alleged that Capital One was a "debt collector" with respect to more than $1 billion in defaulted debts that Capital One acquired from other banks, one of which was plaintiff's.  In plaintiff's case, it acquired his debt from HSBC.

Capital One's predecessor, HSBC, had obtained a judgment against plaintiff for $500 after suing for a larger amount. After Capital One acquired the HSBC portfolio, Capital One filed a second, unfounded collection action against plaintiff seeking to collect a larger sum, without regard to the judgment fixing his obligation at $500.  Capital One served plaintiff with a false affidavit purporting to testify that plaintiff owed the larger sum.

Capital One moved to dismiss the amended complaint, asserting that it was not a "debt collector" subject to the FDCPA.  Magistrate Judge Scofield recommended that the motion be denied, on the ground that the amended complaint sufficiently alleged that Capital One was a debt collector.  (Report and Recommendation, Dkt. #32, R. 8-21)  Upon review, District Judge Duffy granted the motion, holding that on the facts alleged, Capital One was not a debt collector. (Opinion and Order, August 18, 2014, Dkt., #44, R.22-50)    Judgment was entered on the same day.   (Dkt. #45)

Plaintiff  timely filed a notice of appeal on September 16, 2014.  (Dkt. #46)

3

Plaintiff asks that the judgment of dismissal be reversed and that the case be remanded for further proceedings, including certification of a class.

## STATUTE AT ISSUE

15 U.S.C. §1692a

As used in this subchapter--

**(3)** The term "consumer" means any natural person obligated or allegedly obligated to pay any debt.

**(4)** The term "creditor" means any person who offers or extends credit creating a debt or to whom a debt is owed, but such term does not include any person to the extent that he receives an assignment or transfer of a debt in default solely for the purpose of facilitating collection of such debt for another.

**(5)** The term "debt" means any obligation or alleged obligation of a consumer to pay money arising out of a transaction in which the money, property, insurance, or services which are the subject of the transaction are primarily for personal, family, or household purposes, whether or not such obligation has been reduced to judgment.

**(6)** The term "debt collector" means any person who uses any instrumentality of interstate commerce or the mails in any business the principal purpose of which is the collection of any debts, or who regularly collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or due another. Notwithstanding the exclusion provided by clause (F) of the last sentence of this paragraph, the term includes any creditor who, in the process of collecting his own debts, uses any name other than his own which would indicate that a third person is collecting or attempting to collect such debts. . . .   The term does not include--

    **(A)** any officer or employee of a creditor while, in the name of the creditor, collecting debts for such creditor;

    **(B)** any person while acting as a debt collector for another person, both of whom are related by common ownership or affiliated by corporate control, if the person acting as a debt collector does so only for persons to whom it is so related or affiliated and if the principal business of such person is not the collection of debts;

    **(C)** any officer or employee of the United States or any State to the extent that collecting or attempting to collect any debt is in the performance of his official duties;

5

**(D)** any person while serving or attempting to serve legal process on any other person in connection with the judicial enforcement of any debt;

**(E)** any nonprofit organization which, at the request of consumers, performs bona fide consumer credit counseling and assists consumers in the liquidation of their debts by receiving payments from such consumers and distributing such amounts to creditors; and

**(F)** any person collecting or attempting to collect any debt owed or due or asserted to be owed or due another to the extent such activity

> (i) is incidental to a bona fide fiduciary obligation or a bona fide escrow arrangement;

> (ii) concerns a debt which was originated by such person;

> (iii) concerns a debt which was not in default at the time it was obtained by such person; or

> (iv) concerns a debt obtained by such person as a secured party in a commercial credit transaction involving the creditor.

## STATEMENT OF FACTS

**Unfounded lawsuit by Capital One against Davidson**

In 2007, HSBC filed suit against Keith Davidson to collect a credit card account. The account is identified as one ending in 7155. (Amended Complaint ["AC"], ¶21 and Appendix A, Dkt. #13)  Davidson had used the account for personal, family, or household purposes and not for business purposes. (AC, ¶22)

On April 3, 2008, judgment was entered in favor of HSBC and against Davidson in the sum of $500. (AC, ¶23 and Appendix B)  The underlying contract was merged into the judgment by operation of law. (AC, ¶24)

Capital One, as part of its regular business activities, acquires portfolios from other financial institutions, including HSBC. The Davidson "account" was one of those sold by HSBC to Capital One. (AC, ¶25)

On or about August 10, 2012, Capital One filed a second lawsuit against Davidson to collect $1,149.96 on the same account ending in 7155 that had been the subject of the 2007 lawsuit. (AC, ¶26-27 and Appendix C)  Attached to the 2012 complaint was an affidavit executed by Jocelyn Faircloth-Boone. (AC, ¶28 and Appendix D) The affidavit states:

> 1.     My Name is Jocelyn Faircloth-Boone. I am over the age of eighteen and authorized to make this Affidavit on behalf of Capital One Bank (USA), N.A. (Identified in this affidavit as "Capital One"), assignee of HSBC BANK NEVADA, N.A. The facts stated herein are within my personal knowledge and are true and correct and are based on my review of the books and records of Capital One. If called as a witness, I can testify competently to the facts contained herein.

7

> 2.    On or about 05/01/2012, HSBC sold account number ************ 7155 in the name of Keith Davidson by a Purchase and Assumption Agreement and a Bill of Sale to Capital One.  As part of the sale of the Sold Account, certain of HSBC's records relating to the Sold Account were transferred to Capital One.  Those records were made and/or recorded as part of the regular course of business of HSBC at or near the time of the acts, events, conditions or methods recorded.  Because of the sale of the Sold Account, Capital One became the owner of the Sold Account on the date of sale.

(AC, ¶29)   The affidavit was a form, designated "COF 042612.2."   (AC, ¶30)

All affidavits in the form represented by  Appendix D to the Amended Complaint

are prepared in the same manner using the same procedures.   (AC, ¶31)

The statements in the affidavit were false, given the fact that the account had

previously been reduced to judgment in the amount of $500.    (AC, ¶32)  In fact,

Jocelyn Faircloth-Boone had no personal knowledge of the account, and had

reviewed little or no "books and records" before signing the affidavit.  (AC, ¶33)

The state court complaint (Appendix C to the Amended Complaint) was also

false.  It falsely represented that "Defendant(s) owes the Plaintiff the below

principal balance [$1,149.96] plus accrued interest arising from a default on a

credit card agreement."  (AC, ¶34)

Plaintiff alleged that Capital One files and serves upon the consumer

defendant in each collection lawsuit it files in the state of Georgia a

mass-produced, "robo-signed"  affidavit generated at defendant's office.  (AC, ¶36)

Employees who "robo-sign" the affidavits have no personal knowledge of their

"facts" attested to and do not acquire complete files from which they can

8

legitimately conclude that the consumers owe the amounts claimed.  (AC, ¶37)
Prior to filing debt collection lawsuits, Capital One engages in practices that place
a premium on quick collections over accuracy.   (AC, ¶38)   As in the case of Mr.
Davidson, Capital One sometimes attempts to collect debts that have been paid,
settled, or are otherwise legally uncollectible.   (AC, ¶39)   Capital Once has
affirmatively deceived and defrauded consumers by filing false, mass produced,
computer-generated affidavits that are "robo-signed," or signed without the affiant
reading the contents of the document, and/or signed by defendant's employees with
no personal knowledge of the validity of the debt or other facts to which they are
attesting.  (AC, ¶40-42)

Davidson was required to hire counsel to defend the lawsuit.  (AC, ¶35)

**Facts relating to whether Capital One is an FDCPA "Debt Collector"**

Defendant Capital One has regularly acquired credit card portfolios
containing millions of dollars of accounts that were delinquent or in default at the
time of acquisition.   (AC, ¶7)   During 2009-2012, Capital One acquired credit
card portfolios from HSBC, among others.   (AC, ¶8-10)    On or about May 1,
2012, Capital One completed its acquisition of  over $28 billion of HSBC's United
States credit card accounts.  (Annual Report on SEC Form 10-K of Capital One
Financial Corporation for year ending December 31, 2011, original page 2; Annual
Report on SEC Form 10-K of Capital One Financial Corporation for year ending
December 31, 2012, original page 2; Report on Form 8-K of Capital One Financial

9

Corporation dated August 12, 2011 and exhibits thereto.)  (AC, ¶11)

Based on recent credit card delinquency rates, over $1 billion of the acquired accounts were shown on the transferors' books and records as delinquent or in default at the time of acquisition.  (AC, ¶12)  According to the S&P/Experian Consumer Credit Default Indices, the default rate on bank credit cards during the period of these portfolio acquisitions ranged from 3.53% in December 2012 to 9.15% in April 2010.  (AC, ¶13)

Capital One considers the acquisition of portfolios as part of its regular business activities.  Capital One states that "We continue to evaluate and anticipate engaging in . . . selected acquisitions of . . . financial assets, including credit card and other loan portfolios." (Annual Report on SEC Form 10-K of Capital One Financial Corporation for year ending December 31, 2011, original page 26)  (AC, ¶14)  Capital One thus regularly acquires delinquent and defaulted consumer debts that were originally owed to others.  (AC, ¶15)

Capital One has attempted to collect such delinquent or defaulted debts in the regular course of its business, using the mails and telephone system in doing so.  (AC, ¶18)  Capital One could have sold the delinquent accounts to other debt buyers, as there is a substantial market for such debts, see January 30, 2013 Federal Trade Commission report, *The Structure and Practices of the Debt Buying Industry*," http://www.ftc.gov/os/2013/01/debtbuyingreport.pdf, but chose to retain and collect them itself.  (AC, ¶19)

10

Plaintiff contends that under these facts, Capital One is a debt collector as defined in the FDCPA with respect to delinquent and defaulted accounts acquired from HSBC and others.  (AC, ¶20) The Magistrate Judge agreed.  Defendant, and the District Court, disagreed.

## SUMMARY OF THE ARGUMENT

In the leading decision of *Kimber v. Federal Financial Corp.*, 668 F.Supp. 1480, 1486 (M.D.Ala. 1987) (Myron Thompson, J.), the court analyzed the language of the FDCPA at length, found it ambiguous with respect to the growing practice of purchasing bad debts, and held that purchasers were covered.

The *Kimber* decision has been followed by the great weight of authority over the years, most notably *Schlosser v. Fairbanks Capital Corp.*, 323 F.3d 534, 536 (7th Cir. 2003), and has been approved by the regulatory agencies charged with enforcing the FDCPA.  The overwhelming weight of authority holds that companies that regularly purchase and collect defaulted consumer debts originally owed to others are regulated by the FDCPA.  Congress has acquiesced in this construction, by allowing it to stand while amending the FDCPA on ten occasions between 1978 and 2010.

The District Court adopted an erroneous construction of the FDCPA in an effort to remove from its scope entities such as Capital One, which regularly acquired defaulted consumer debts, but whose principal business activity is not the acquisition and collection of defaulted consumer debts.  The District Court's construction is not only inconsistent with precedent and accepted norms of interpretation, but makes the FDCPA applicable to sales finance companies, such as Ford Motor Credit, whose principal business activity is the acquisition and collection of non-defaulted consumer debts.  Such entities have not heretofore been

12

regarded as within either the letter or the purpose of the FDCPA.

The District Court did this by holding that the phrase "owed or due or asserted to be owed or due another" in §1692a(6) does not apply to persons whose principal purpose is the collection of debt, but only to persons who "regularly" collect debt.  Based on this distinction, rejected by most other courts, the District Court concluded that because Capital One owns the debts it collects, it is not a "debt collector."

The problem is that the principal exclusions from FDCPA coverage  – notably, the exclusions for debts not in default and for debts originated by the person  –  are also limited to persons who collect debts  "owed or due or asserted to be owed or due another."  If that phrase does not apply to persons whose principal business is the collection of debts, then sales finance companies such as Ford Motor Credit cannot come within those exclusions, which have heretofore been considered applicable to them.

In short, the District Court's construction is both grossly underinclusive and grossly overinclusive.  It is incorrect, and this Court should reverse.

## ARGUMENT

## I.    STANDARD OF REVIEW

This Court reviews the grant of a motion to dismiss de novo, taking as true the facts as alleged. *Doe v. Pryor*, 344 F.3d 1282, 1284 (11th Cir. 2003).

## II.    THE ISSUE IS NOT ONE OF FIRST IMPRESSION IN THIS CIRCUIT OR ELSEWHERE, AND THE DISTRICT COURT'S OPINION IS CONTRARY TO THE WEIGHT OF AUTHORITY

Although the District Court's opinion begins by stating that this case "involves a matter of first impression in the circuit" (Opinion, p. 1, R.22), this is incorrect.  Under the great weight of authority, Capital One is a debt collector because it regularly collects debts originally owed to another, and which were in default when Capital One acquired them.

### A.    *Kimber v. Federal Financial Corp.*

The leading decision is *Kimber v. Federal Financial Corp.*, 668 F.Supp. 1480, 1486 (M.D.Ala. 1987) (Myron Thompson, J.), where the court analyzed the language of the FDCPA at length, found it ambiguous with respect to the growing practice of purchasing bad debts, and held that purchasers were covered.  "[T]he court must therefore conclude that, even though FFC collects debts for itself, it is still a debt collector within the meaning of §§ 1692a(4) and 1692a(6) of the Act, because the corporation regularly collects debts . . .  and because the debts the corporation collects were already in default when they were assigned to the corporation and thus the corporation falls within the assignee exception to the

definition of creditor."

### B.    Subsequent decisions

The overwhelming weight of authority holds that companies that regularly purchase and collect defaulted consumer debts originally owed to others are regulated by the FDCPA.  "The legislative history of section 1692a(6) [which defines 'debt collector'] indicates conclusively that a debt collector does not include . . . an assignee of a debt, as long as the debt was not in default at the time it was assigned."  *Perry v. Stewart Title Co.*, 756 F.2d 1197, 1208 (5th Cir. 1985), citing S. Rep. No. 95-382, 95th Cong., 1st Sess. 3, reprinted in 1977 USCCAN 1695, 1698. Conversely, the assignee of a debt that is in default at the time of the assignment is a "debt collector," if either the assignee's principal purpose is the collection of delinquent debts, or the assignee regularly engages in the collection of delinquent debts.

Following *Kimber*, the federal courts have consistently held that a company that purchases and attempts to collect delinquent debts as a regular part of its business activities is a "debt collector" within the meaning of the FDCPA with respect to the delinquent debts, even if its principal purpose is not the collection of delinquent debts.

In *Schlosser v. Fairbanks Capital Corp.*, 323 F.3d 534, 536 (7th Cir. 2003), the Seventh Circuit held that a mortgage servicer that acquired a portfolio of loans of which about 10% were delinquent was a debt collector with respect to those

15

loans.  The court held: "In other words, the Act treats assignees as debt collectors if the debt sought to be collected  was in default when acquired by the assignee, and as creditors if it was not [in default]."  *Accord*, *McKinney v. Cadleway Props., Inc.*, 548 F.3d 496, 501 (7th Cir.  2008) ("the purchaser of a debt in default is a debt collector for purposes of the FDCPA even though it owns the debt and is collecting for itself");  *Dolan v. Fairbanks Capital Corp.*, 03cv3285, 2008 WL 4515932, *10 (E.D.N.Y., Sept. 30, 2008) (mortgage company that acquires defaulted loan is a debt collector).

The District Court sought to distinguish *Schlosser* on the theory that the principal business of Fairbanks Capital was the acquisition and collection of defaulted debt. (Opinion, p. 22, R. 43)   This is not accurate.  While Fairbanks Capital Corporation, the defendant in *Schlosser* and *Dolan*,  may have acquired 12,800 allegedly delinquent high-interest mortgages from ContiMortgage, the *Schlosser* complaint specifically alleged that the total number of loans acquired in the transaction was 128,000 and that 10% were delinquent.  (Amended Complaint in *Schlosser* [Appendix A to this brief], par. 7)  That is, just like Capital One in this case, Fairbanks regularly obtained and collected delinquent debts, but that was not a majority of its business.

Similarly, in *Bridge v. Ocwen Federal Bank, FSB*, 681 F.3d 355, 362 (6th Cir. 2012), the Sixth Circuit held that a mortgage company was a "debt collector" with respect to delinquent loans it acquires:  "we hold that the definition of debt

16

collector pursuant to § 1692a(6)(F)(iii) includes any non-originating debt holder that either acquired a debt in default or has treated the debt as if it were in default at the time of acquisition"). *Accord, Wadlington v. Credit Acceptance Corp.*, 76 F.3d 103, 106 (6th Cir. 1996) (sales finance company is debt collector only with respect to accounts delinquent when first acquired); *Johnson v. Americredit Financial Services, Inc.*, No. 3:08-0405, 2009 WL 2929396 (M.D.Tenn. Sept. 8, 2009) (same, "appellate courts have repeatedly held that assignees are debt collectors if the debt sought to be collected was in default when it was acquired, and this remains so even if the assignee then owns the debt and is collecting for itself"); *Bates v. Novastar/ Nationstar Mortgage LLC*, 1:08cv1443, 2008 WL 2622810, *5-6 (N.D.Ga., June 24, 2008) (court recognizes that outright owner of debt "could also be a 'debt collector' subject to the statute, if the debt was already in default at the time the creditor acquired it"); *Anderson v. Deutsche Bank Nat'l Tr. Co.*, 1:11cv4091, 2012 WL 3756512 (N.D.Ga. Aug. 6, 2012) ("a consumer's creditors, a mortgage servicing company, or an assignee of a debt are not considered 'debt collectors' so long as the debt was not in default at the time it was assigned"), adopted, 2012 WL 3756435 (N.D.Ga., Aug. 27, 2012); *Deutsche Bank Trust Co. Americas v. Garst*, 989 F.Supp.2d 1194, 1201 (N.D.Ala. 2013) ("a mortgagee and its assignee, including mortgage servicing companies, are not debt collectors under the FDCPA when the debt is not in default at the time the mortgage-holder acquires the debt. . . .  a different scenario is presented when the

17

debt is already in default at the time it is acquired"); *Prickett v. BAC Home Loans*, 946 F.Supp.2d 1236, 1248 (N.D.Ala. 2013) ("a mortgagee and its assignee, including mortgage servicing companies, are not debt collectors under the FDCPA when the debt is not in default at the time the mortgage-holder acquires the debt"); *Williams v. Edelman*, 408 F.Supp.2d 1261, 1266 (S.D.Fla. 2005); *Monroe v. CitiMortgage, Inc.*, No. 8:07cv0066-SCB-TGW, 2007 WL 15601904, *2 (M.D.Fla. May 29, 2007).

Mortgage companies such as Fairbanks, Ocwen, Novastar, Deutsche Bank, Nationstar, and CitiMortgage are not in the principal business of acquiring and collecting defaulted debts, although they do so on a regular basis.

Indeed, "the overwhelming weight of authority both in this circuit and in other circuits confirms the majority opinion in *McKinney*, namely, that a person who attempts to collect on a debt acquired after default is a 'debt collector' under the FDCPA." *Zirogiannis v. Dreambuilder Investments*, 782 F.Supp.2d 14, 19-20 (E.D.N.Y. 2011) (mortgage company); *accord*, *Durkin v. Equifax Check Servs.*, 00 C 4832, 2002 WL 31426397 (N.D.Ill., Oct. 24, 2002) ("Third-party collectors that purchase debts after default and attempt collection on those debts do collect debts owed another", relying on *Kimber*); *Cirkot v. Diversified Systems*, 839 F.Supp. 941 (D.Conn. 1993)(following *Kimber*);  *Ruth v. Triumph Partnerships*, 577 F.3d 790, 797 (7th Cir. 2009) ("[A] party that seeks to collect on a debt that was in default when acquired is a debt collector under the FDCPA, 'even though it owns the debt

18

and is collecting for itself.'").

Other decisions hold generally that businesses which acquire delinquent debt are subject to the FDCPA, without regard to whether they do so as a principal business activity or merely "regularly."  In *LeBlanc v. Unifund CCR Partners*, 601 F.3d 1185 (11th Cir. 2010), this Court imposed FDCPA liability on a debt buyer, finding it "undisputed that Unifund is a 'debt collector' seeking to recover from LeBlanc on an outstanding 'consumer debt.'" (601 F.3d at 1193)    *Accord, Pollice v. Nat'l Tax Funding*, 225 F.3d 379, 403 (3d Cir. 2000) ("an assignee may  be deemed a 'debt collector' if the obligation is already in default when it is assigned"); *FTC v. Check Investors, Inc.*, 502 F.3d 159, 173 (3d Cir. 2007) ("one attempting to collect a debt is a 'debt collector' under the FDCPA if the debt in question was in default when acquired"); *Perry v. Stewart Title Co.*, *supra,* 756 F.2d 1197, 1208 (5th Cir. 1985); *Kuria v. Palisades Acquisition XVI, LLC*, 752 F.Supp.2d 1293, 1301 (N.D.Ga. 2010) (court held that debt buyer Palisades is subject to the FDCPA even though it purchased defaulted debt outright, stating that "a 'creditor' may be treated as a 'debt collector' under the FDCPA if the creditor bought a debt already in default at the time of purchase for the purpose of collecting it directly," citing the Seventh Circuit decision in *Schlosser* with approval); *Midland Funding, LLC v. Giraldo*, 39 Misc.3d 936, 961 N.Y.S.2d 743 (Dist. Ct. 2013).

The Magistrate Judge thought these decisions to be in point:

Although the Eleventh Circuit has not addressed the specific issue presented in this case, where an entity like Capital One acquires a large portfolio of debt, the rule followed by the district judges in this circuit, as well as the majority of circuits to have addressed the issue, is that an allegation that the defendant regularly seeks to collect on debts acquired after default generally suffices to qualify one as a debt collector, at least at the pleading stage. *Compare Kuria*, 752 F. Supp. 2d at 1296, 1301 ("[A] third party who buys debt already in default may be liable for FDCPA violations as a 'debt collector' despite having 'creditor' status."), and *Bates*, 2008 WL 2622810, at *6 ("The FDCPA definitions for creditor and debt collector are separate but overlap, allowing for the possibility that a creditor could also be a 'debt collector' subject to the statute, if the debt was already in default at the time the creditor acquired it."), with *Monroe v. CitiMortgage, Inc.*, No. 8:07-cv-0066-SCB-TGW, 2007 WL 1560194, at *2 (M.D. Fla. May 29, 2007) (defendant was not a debt collector because there was no allegation that plaintiff's mortgage was in default at the time defendant became the assignee). *See also Bridge v. Ocwen Fed. Bank, FSB*, 681 F.3d 355, 360 (6th Cir. 2012) (finding that plaintiffs had sufficiently alleged the defendants were debt collectors because, among other reasons, "the Defendants sought collection of [plaintiffs'] 'debt' which they claimed was already in default at the time they obtained it"); *Schlosser v. Fairbanks Capital Corp.*, 323 F.3d 534, 536-39 (7th Cir. 2003) (plaintiffs sufficiently alleged that defendant was a debt collector when it acquired a mortgage it mistakenly believed to be in default and then sent a notice of default demanding full payment of the balance); *Zirogiannis v. Dreambuilder Invs. LLC*, 782 F. Supp. 2d 14, 19-20 (E.D.N.Y. 2011) (granting motion to dismiss because plaintiff did not allege that defendant acquired loan after it had gone into default); *Dolan v. Fairbanks Capital Corp.*, No. 03-CV-3285 DRH AKT, 2008 WL 4515932, at *10-11 (E.D.N.Y. Sept. 30, 2008) (plaintiff sufficiently alleged mortgage loan servicer was a debt collector when it began servicing the loan after default).

.  .  .  Capital One's position is not without some merit under a literal construction of the FDCPA's language. But the courts that have ruled otherwise reason that a person who acquires a debt after it has gone into default and then attempts to collect that debt effectively *is* collecting the debt for another. To rule otherwise would be to allow a debt collector to avoid liability simply by purchasing the debt from the original creditor before attempting to collect. E.g., *Check Investors*, 502 F.3d at 172-73 ("Although the argument is rather clever, it is wrong. It would elevate form over substance and weave a technical loophole into the fabric of the FDCPA big

20

enough to devour all of the protections Congress intended in enacting that legislation."). The undersigned finds the reasoning of the Seventh Circuit to be instructive on this point:

> [F]or debts that do not originate with the one attempting collection, but are acquired from another, the collection activity related to that debt could logically fall into either category [of "creditor" or "debt collector."] If the one who acquired the debt continues to service it, it is acting much like the original creditor that created the debt. On the other hand, if it simply acquires the debt for collection, it is acting more like a debt collector.

*Schlosser*, 323 F.3d at 536.

Other than the District Court's decision in this case, the principal contrary decision is *Schlegel v. Wells Fargo Bank, N.A.*, 720 F.3d 1204 (9th Cir. 2013), discussed below.

### C.    Administrative interpretation

The Federal Trade Commission ("FTC"), which prior to the Dodd-Frank Act was charged with enforcing the FDCPA, has taken the position that purchasers of defaulted consumer debts are FDCPA "debt collectors." *FTC v. Check Investors, Inc.*, *supra*; January 30, 2013 FTC report, *The Structure and Practices of the Debt Buying Industry*,"[1] at pp. 3-4 ("Some debt buyers have argued that because they collect debts they own, not debts others own, the FDCPA does not govern their activities because they are creditors. In the seminal decision in *Kimber v. Federal Financial Corp*., the court rejected that argument, holding that debt buyers that seek to recover on debts that were in default when the debt buyers acquired them

---

[1]    www.ftc.gov/os/2013/01/debtbuyingreport.pdf

21

are debt collectors for purposes of the FDCPA.  Since *Kimber*, many other courts have concluded that such debt buyers are debt collectors for purposes of the FDCPA"); FTC Report, *Collecting Consumer Debts: The Challenges of Change*, p. 5 (2009)[2]  ("The FDCPA applies to third-party 'debt collectors,' a term that includes contingency agencies, collection law firms, and debt buyers, but generally does not include creditors' in-house collectors.   Congress's rationale for applying the statute only to third-party collectors was that, '[u]nlike creditors, who generally are restrained by the desire to protect their good will when collecting past due accounts, independent collectors are likely to have no future contact with the consumer and often are unconcerned with the consumer's opinion of them.'"); FTC Report, *Repairing a Broken System: Protecting Consumers in Debt  Collection Litigation and Arbitration,* p. 6 n. 15 (2010)[3]  ("Debt buyers – persons who collect debt on their own behalf that they have purchased from creditors or debt collectors – are covered by the FDCPA if the accounts were in default at the time the debt buyers purchased them. FDCPA §§ 803(4), 803(6); 15 U.S.C. §§ 1692a(4), 1692a(6); *see also Ruth v. Triumph P'ships*, 557 F. 3d 790, 796-97 (7th Cir. 2009); *FTC v. Check Investors*, 502 F. 3d 159, 171-72 (3d Cir. 2007)").

The FTC position dates back to at least 1993, when an FTC staff opinion letter (Dkt. #26, Appendix A [attached as Appendix B to this brief]) endorsed the

---

[2]  www.ftc.gov/bcp/workshops/debtcollection/dcwr.pdf.

[3]  www.ftc.gov/os/2010/07/debtcollectionreport.pdf

construction of the FDCPA in *Kimber* and stated that the FTC considered a debt buyer to be an FDCPA "debt collector." "In sum, it is our view that a party that obtains consumer obligations in default for the purpose of collection is a 'debt collector' under the FDCPA, even if that party actually purchases the accounts from the original creditor."

In 2004, the Federal Trade Commission shut down debt buyer  CAMCO, alleging violation of the FDCPA.  (Dkt. #26, Appendix B [attached as Appendix C to this brief])  The press release issued by the FTC in connection with that case noted that "CAMCO buys old debt lists that frequently contain no documentation about the original debt and in many cases no Social Security Number for the original debtor."[4]   The filing of the complaint against CAMCO was voted upon by the Commission and represents an official statement that the conduct complained of violates the statute.

The Consumer Financial Protection Bureau, which under Dodd-Frank has taken over some of the FTC's responsibility with respect to the FDCPA, has agreed that the FDCPA applies to "debt buyers collecting on debts they purchased in default."  2013 FDCPA Annual Report, p. 14 n. 14.[5]

**D.    Congressional acquiescence**

---

[4]  www.ftc.gov/opa/2004/12/camco.htm

[5] http://files.consumerfinance.gov/f/201303_cfpb_March FDCPA_Report1. pdf

23

Moreover, Congress has acquiesced in the consistent construction of the FDCPA as covering purchasers of defaulted debt who collect for their own account.  The FDCPA is not an obscure enactment that escapes Congressional attention  – it has been amended not less than 10 times since *Kimber*.  (1)  Pub.L. 111-203, Title X, §1089(2), July 21, 2010, 124 Stat. 2092.   (2) Pub.L. 109-351, Title VIII, § 802, Oct. 13, 2006, 120 Stat. 2006. (3) Pub.L. 104-208, Title II, § 2305(a), Sept. 30, 1996, 110 Stat. 3009-425.   (4) Pub.L. 104-88, Title III, § 316, Dec. 29, 1995, 109 Stat. 949.  (5)  Pub.L. 102-550, Title XVI, § 1604(a)(8), Oct. 28, 1992, 106 Stat. 4082.  (6) Pub.L. 102-242, Title II, § 212(e), Dec. 19, 1991, 105 Stat. 2301.  (7) Pub.L. 101-73, Title VII, § 744(n), Aug. 9, 1989, 103 Stat. 440.  (8)  Pub.L. 98-443, § 9(n), Oct. 4, 1984, 98 Stat. 1708.  (9)  Pub.L. 95-630, Title V, § 501, Nov. 10, 1978, 92 Stat. 3680.  (10)  Pub.L. 95-473, § 3(b), Oct. 17, 1978, 92 Stat. 1466.   At no time has Congress rejected the consistent construction of courts, the FTC, and the CFPB that purchasers of defaulted debts are covered.

If there is a split on how to interpret a statute, the administrative construction of the statute is entitled to deference. *Chevron, U.S.A., Inc. v. Natural Resources Defense Council, Inc.,* 467 U.S. 837 (1984).  Moreover, Congressional acquiescence in repeated administrative and judicial construction of statutory language is entitled to great weight, even to the point of "add[ing] a gloss or qualification to what is on its face unqualified statutory language."   *Saxbe v. Bustos*, 419 U.S. 65, 74 (1974).

24

### E.    The Definition of "Debt Collector" is Ambiguous

Although a large number of judges and administrators have thus concluded that the FDCPA definitions are ambiguous, and that the construction of the FDCPA urged by plaintiff and adopted by the Magistrate Judge is correct, the District Court adopted Capital One's argument that all of these authorities are contrary to the "unambiguous" language of the statute.  (Opinion, p. 8) Indeed, the District Court stated that "Neither party claims otherwise" (Id.), when plaintiff certainly did so.

The District Court's statement is inherently illogical.  The fact that a large number of presumably reasonable jurists have interpreted language in a certain way indicates that such interpretation is reasonable for purposes of determining whether an ambiguity exists. The Fifth Circuit so concluded in a pre-1980 decision binding on this Court, *Boston Ins. Co. v. Gable*, 352 F.2d 368, 370 (5th Cir. 1965) ("we agree with the trial court's further conclusion that since the interpretation of this contractual language has been differently construed by courts of different jurisdictions," it is ambiguous, and therefore should be construed against the insurance company), as have other courts, *Lefrak Organization, Inc. v. Chubb Custom Ins. Co.*, 942 F.Supp. 949, 957 (S.D.N.Y. 1996) ("the range and variety of judicial opinions" deriving different meanings from the same language in a form insurance policy supports the conclusion that it is ambiguous, i.e., can reasonably be interpreted to mean different things). As demonstrated below, the District Court

25

is incorrect.

## III.    CAPITAL ONE "REGULARLY" ACQUIRES AND COLLECTS DELINQUENT DEBTS

There can be no doubt that the volume of Capital One's defaulted debt acquisitions and collection activities constitutes "regular" collection activities within the meaning of the FDCPA.  A business "regularly" purchases and collects delinquent debts if such activities form a regular, albeit small, portion of its business activities.  In *Oppong v. First Union Mortgage Corp.,*  407 F.Supp.2d 658 (E.D.Pa. 2005), aff'd in relevant part,  215 Fed.Appx. 114 (3d Cir. 2007), the court held that "debt collectors are those who frequently and consistently perform debt collection activities as part of their business services," regardless of "the percentage of debt collection business in relation to the defendant's other business," so that acquiring 89 delinquent mortgages within 3 months (356 per year) resulted in "regularly" collecting delinquent debts regardless of the fact that 141,000 were acquired that were not delinquent.  The percentage of collection activity was relevant under the "principal purpose" part of the test.

The issue arises with some frequency with respect to general practice law firms.  In *Goldstein v. Hutton, Ingram, Yuzek, Gainen, Carroll & Bertollotti*, 374 F.3d 56 (2d Cir. 2004), the court considered whether a general practice law firm was a "debt collector" because it "regularly" collected defaulted debts.  The court held that the trier of fact could find the law firm was subject to the FDCPA based on sending 145 collection demands during one year even though the firm only

26

received $5,000 in revenues amounting to 0.05% of its $10,000,000 revenue over that period.   The *Goldstein* court considered relevant "(1) the absolute number of debt collection communications issued, and/or collection-related litigation matters pursued, over the relevant period(s), (2) the frequency of such communications and/or litigation activity, including whether any patterns of such activity are discernable, (3) whether the  entity has personnel specifically assigned to work on debt collection activity,  (4) whether the entity has systems or contractors in place to facilitate such activity, such as use of mailing services, collection software, and use of form letters, and (5) whether the activity is undertaken in connection with ongoing client relationships with entities that have retained the lawyer or firm to assist in the collection of outstanding consumer debt obligations," as well as (6) "whether the law practice seeks debt collection business by marketing itself as having debt collection expertise."  (374 F.3d at 63)   Factor (5) includes relationships with collection agencies, "lenders or other creditors, landlords or other lessors, and service providers."  (*Id.*)

In *Stojanovski v. Strobl & Manoogian, P.C.*, 783 F.Supp. 319, 322 (E.D.Mich. 1992), a law firm's debt collection work, which amounted to less than 4% of its total business, brought it within the definition. "While the ratio of debt collection to other efforts may be small, the actual volume is sufficient to bring defendant under the Act's definition of 'debt collector.'" (783 F.Supp., at 322).  In *Cacace v. Lucas*, 775 F.Supp. 502 (D.Conn. 1990), an attorney who represented

27

four collection agencies, filed over 150 collection suits in a two-year period, and sent one particular collection letter over 125 times in a 14-month period was a debt collector even though debt collection was merely incidental to his primary law practice.  In *Tragianese v. Blackmon,* 993 F.Supp. 96 (D. Conn. 1997), the court held that sending 60 collection letters during a period of several weeks is sufficient. In *Silva v Mid-Atlantic Mgmt. Corp.*, 277 F Supp 2d 460 (E.D.Pa. 2003), the court  held that a law firm was subject to the FDCPA when it consistently accepted at least 10 debt collection matters every year.

Here, Capital One states that an integral part of its business consists of the acquisition of credit card portfolios.  It has in fact made multiple acquisitions of credit card portfolios in the last several years, totaling billions in receivables and millions of accounts.  A certain portion of the portfolios (3%-10%) are delinquent or in default at the time of acquisition.  Although the percentage is not large, the absolute number of defaulted debts acquired is $1 billion or more, a number larger than most firms whose only business is acquiring defaulted debts.  The number of consumers involved is in the hundreds of thousands.

Capital One does not exclude the defaulted debts from purchase, or sell the delinquent debts immediately afterwards, even though there is a ready market for such debts, and getting rid of the delinquent debts would mean that it would never engage in any conduct that could violate the FDCPA.  Instead, Capital One attempts to collect the debts itself, using form documents for that purpose.  The

28

accounts are sent to high-volume collection law firms, with which Capital One maintains relationships.  The volume of delinquent debts acquired is such that Capital One is engaged in collecting the debts on a continuous basis.

Under the authorities, Capital One "regularly" acquires and collects delinquent and defaulted debts originally owed to others.

## IV.    THE DISTRICT COURT'S DECISION IS INCORRECT

The District Court focused on the language in 15 U.S.C. §1692a(6) defining "debt collector" as "any person who uses any instrumentality of interstate commerce or the mails in any business the principal purpose of which is the collection of any debts, or who regularly collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or due another."   Although the majority view, beginning with *Kimber*, is that "owed or due or asserted to be owed or due another" modifies both the "principal purpose" clause and the "regularly collects or attempts to collect" clause, and that it means "prior to the involvement of the alleged debt collector," the District Court decided that it was "plain" that the  "owed or due or asserted to be owed or due another" clause only applied to persons who "regularly collect" and meant after the involvement of the alleged debt collector.   The District Court then decided that the §1692a(6)(F) exception  –  covering "any person collecting or attempting to collect any debt owed or due or asserted to be owed or due another to the extent such activity . . . concerns a debt which was not in default at the time it was obtained by such person"  – only applied to persons who "regularly collect."

### A.    The District Court's Reading Is Both Underinclusive and Overinclusive

The District Court's  "construction" simultaneously covers both too much and too little.  All of the §1692a(6)(F) exceptions for debts originated by a "person" or handled by a "person" prior to default apply only to debts "owed or

due or asserted to be owed or due another."   The overinclusiveness problem with the District Court's ruling is that there are numerous businesses whose "principal purpose" is collecting consumer obligations that have not heretofore been considered subject to the FDCPA because of these exceptions.  These entities now become subject to the FDCPA under the District Court's reading.

Specifically, there are numerous entities whose *principal* business is the purchase of *non*-delinquent debts and their collection from consumers – sales finance companies such as Ford Motor Credit and Toyota Motor Credit, for example.  Such entities are not currently thought of as FDCPA "debt collectors" because of the §1692a(6)(F) exceptions, particularly the one for debts acquired prior to default.  *Musudi v. Ford Motor Credit Co.*, 07cv1082, 2008 WL 2944643 (E.D.N.Y., July 31, 2008).  They might be debt collectors if they regularly acquire delinquent debts,  *Johnson v. Americredit Financial Services, Inc., supra*, No. 3:08-0405, 2009 WL 2929396 (M.D.Tenn. Sept. 8, 2009), but not otherwise.

The problem created by the District Court's ruling is that *all* of  the §1692a(6)(F) exceptions are *only* applicable to persons who collect "any debt owed or due or asserted to be owed or due another."  Under the District Court's reading, entities whose principal business is the purchase of non-delinquent consumer debt, such as Ford Motor Credit and Toyota Motor Credit, are subject to the FDCPA, because the exceptions for "a debt which was not in default at the time it was obtained by such person" and "a debt which was originated by such person"

31

are part of §1692a(6)(F), and §1692a(6)(F) only apply to "any person collecting or attempting to collect any debt owed or due or asserted to be owed or due another . . . ." Ford Motor Credit, Toyota Motor Credit and similar sales finance companies are not collecting for another – they are collecting consumer debts which they have purchased, and that is their principal business activity.[6] Thus, if the statutory language about "collecting or attempting to collect any debt owed or due or asserted to be owed or due another" does not apply to them, there is no exception to remove them from the FDCPA.

The District Court did not appear to recognize the problem, for it also questioned, *sua sponte*, whether a debt that has been reduced to judgment is in "default" unless the judgment is not paid on time. (Op., p. 14 and n. 8, R. 35) However, the only relevant part of the definition of "debt collector" that addresses whether a debt is in default is the exception applicable only to those "collecting or attempting to collect any debt owed or due or asserted to be owed or due another." In any event, the FDCPA plainly looks to whether the underlying obligation was in default when the debt collector became involved with it, even after it is reduced to judgment; the judgment is not treated as a separate debt. 15 U.S.C. §§1692a(4) ("debt" means "any obligation or alleged obligation of a consumer to pay money arising out of a transaction in which the money, property, insurance, or services

---

[6] Sometimes a sales finance agency is involved in the "origination" of the debt (credit approval and determination of credit terms) and sometimes its first involvement is after "origination," but generally the obligation is not delinquent.

which are the subject of the transaction are primarily for personal, family, or household purposes, whether or not such obligation has been reduced to judgment"), 1692c(b) (exception to prohibition on third party communications to collect debt where necessary to effectuate postjudgment remedies), 1692g(a)(4) (verification of debt that has been reduced to judgment by providing a copy of the judgment).

In short, in its effort to remove from the FDCPA debt purchases which have heretofore been considered subject to the statute, the District Court deprived entities which have heretofore been considered outside the FDCPA of the "non-delinquent debt" and "origination"  exceptions, which were the basis for their non-covered status.  Furthermore, sales finance companies have been a major part of the economy at all times between 1977, when the FDCPA was enacted, and the present, so this is not some minor anomaly.

At the same time, the District Court's reading excludes from the definition of debt collector an entity such as Capital One, which acquires over $1 billion in defaulted debt as part of its regular business activities and elects to collect it using dubious means, just because more than 50.1% of its business activities consist of something other than the collection of delinquent debt.

These problems do not exist if, as originally stated in Judge Thompson's thoughtful opinion in *Kimber*, the phrase "owed or due or asserted to be owed or due another" applies to ***both*** a person who regularly collects ***and*** a person whose

33

principal business is collection, ***and*** refers to a point in time prior to the involvement of the putative debt collector in the matter.  Under this reading, the exceptions in §1692a(6)(F) apply to both the "principal purpose" and "regularly collects" clauses, and exempt persons whose first involvement with the debt comes prior to default.   Thus, the ordinary business activities of Ford Motor Credit are not covered  – it purchases nondefaulted debts shortly after they are originated by car dealers, with or without the involvement of Ford Motor Credit  –  but a company that "regularly" acquires delinquent debt is covered with respect to the delinquent debts.

The District Court's rejection of 30 years of developed judicial and administrative wisdom as to what the FDCPA covers, coupled with a reading of the statute that produces results that are simultaneously both grossly overinclusive and grossly underinclusive and inconsistent with how everyone has interpreted the statute, strongly suggests that the Magistrate Judge was right and the District Judge was wrong.  The definition is ambiguous and requires construction, and the *Kimber* construction is correct.

### B.    Congress Was Not Attempting to Define Two Distinct Groups

There are several other problems with the District Court's decision.  First, "owed or due or asserted to be owed or due another" obviously modifies "debts." Most logically, it modifies it each time it appears.  It would be odd for the same word to have different meanings in the same sentence.  "[T]here is a presumption

that a given term is used to mean the same thing throughout a statute."  *Brown v. Gardner,* 513 U.S. 115, 118 (1994).

The District Court's decision refers to two "prongs" of §1692a(6), as if Congress meant to describe two distinct sets of persons.  A more likely explanation is that the "prongs" substantially overlap and are meant to provide the most expansive possible coverage for the FDCPA.

In most cases, if the principal purpose of a business is the collection of debts, it will do so "regularly."  The one significant exception is a nascent debt collection business, which commits an FDCPA violation on its earliest collection attempts.  This is actually a substantial set of persons  – the most egregious FDCPA offenders  repeatedly use new entities, real or fictitious.[7]  There is also a proof issue  – without discovery, a consumer is likely to be able to allege the "purpose" of a business, based on how it holds itself out to the public, but not what it in fact does.  Since there is no reason why a business that holds itself out as engaging in the regulated activities should be exempt, the "principal purpose" language allows businesses to be sued as "debt collectors" based on how they hold themselves out, or even if they have just been created.

At the same time, the very substantial degree of overlap between "regularly"

---

[7]    S e e    F T C    e n f o r c e m e n t    a c t i o n s    r e p o r t e d    a t www.ftc.gov/news-events/press-releases/2014/07/court-halts-debt-collectors-operations-freezes-assets;  and    www.ftc.gov/news-events/press-releases/2013/01/ftc-action-leads-shutdown-texas-based-debt-collector-allegedly.

and "principal purpose" counsels against a reading that applies "owed or due or asserted to be owed or due another" to one but not the other.

### C.    The District Court's Reading Makes Substantial Portions of the Definition Meaningless

Second, under the District Court's reading, the exemption in §1692a(6)(F)(iv) would be completely superfluous, and that in §1692a(6)(F)(iii) largely so.  Statutes are generally not construed in such a manner that substantial portions are meaningless or superfluous. *Kozak v. Hillsborough County, Fla.*, 644 F.3d 1347, 1349 (11th Cir. 2011).

The §1692a(6)(F)(iv) exemption exempts "a debt obtained by such person as a secured party in a commercial credit transaction involving the creditor."  This refers to a situation where Company A extends credit to Company B, secured by Company B's receivables.  If Company B's receivables consist of consumer obligations, Company B defaults, and Company A acquires the consumer receivables, Company A would otherwise be subject to the FDCPA in collecting them.  Company A is, by definition, collecting for itself, not acting as agent for another.   Also by definition, Company A's principal business is extending secured commercial credit, and it would no doubt try to ***avoid*** acquiring consumer receivables as a result of customer default.  At the same time, Company A is likely to have some incidence of default.  Thus, it "regularly" acquires and collects defaulted debt for its own account, but never as its "principal" business.   Unless a person which regularly acquires and collects defaulted consumer debts for its own

36

account is subject to the FDCPA, there is no need for this exception. Furthermore, unless the prefatory language "owed or due or asserted to be owed or due another" applies to an entity which has acquired debt, the exception is ineffective and nonsensical.

Section §1692a(6)(F)(iii) exempts collection of "a debt which was not in default at the time it was obtained by such person."  Significantly, the District Court did not offer any plausible reason why Congress would grant this critical exemption to persons who regularly engage in "collecting or attempting to collect any debt owed or due or asserted to be owed or due another," but not to persons whose principal business is collecting debts.

The §1692a(6)(F)(iii) exemption presumes that the "person" has "obtained" a debt.  The core meaning of "obtain" is to get or acquire. Webster's New World College Dictionary, 4th Ed. (accessed January 12, 2014).  The language thus contemplates a person collecting a delinquent debt "owed or due or asserted to be owed or due another" that has nevertheless been "obtained" by the first person. *Kimber* reconciles these propositions by looking to the time immediately prior to "obtaining" to determine whether the debt was owed to another.

The fact that an exemption or exclusion was created indicates that but for the exemption the activities exempted would be within the basic scope of the statute. As a matter of common sense the existence and language of an exclusion from a definition are indicative of the meaning and scope of the basic definition.  *Admiral*

*Ins. Co. v. Weitz & Luxenberg, P.C.*, No. 02 Civ. 2195(RWS),  2002 WL 31409450 (S.D.N.Y., Oct. 24, 2002) (the question arises with some frequency in the context of insurance coverage).

Analyzing the consumer-protective purposes of the FDCPA, *Kimber* and its progeny have resolved the ambiguities by holding that the temporal relationship contemplated by Congress is that the debt was  "originally" or "previously" owed or due another, so that entities that acquire debts that are delinquent at the time of acquisition are covered, whether they do so as part of their regular business activities or as their principal business activity.

Indeed, many of the decisions holding purchasers of defaulted debt to be subject to the FDCPA involved entities whose principal purpose was not the purchase of debt, although they did so regularly.  *E.g.*, *Bridge v. Ocwen Federal Bank, FSB*, 681 F.3d 355, 362 (6th Cir. 2012) (mortgage company); *Schlosser v. Fairbanks Capital Corp.*, 323 F.3d 534, 536 (7th Cir. 2003) (same); *Bates v. Novastar/ Nationstar Mortgage LLC*, 1:08cv1443, 2008 WL 2622810, *5-6 (N.D.Ga., June 24, 2008) (same); *Anderson v. Deutsche Bank Nat'l Tr. Co.*, 1:11cv4091, 2012 WL 3756512 (N.D.Ga. Aug. 6, 2012), adopted, 2012 WL 3756435 (N.D.Ga., Aug. 27, 2012) (same);  *Deutsche Bank Trust Co. Americas v. Garst*, 989 F.Supp.2d 1194, 1201 (N.D.Ala. 2013) (same); *Prickett v. BAC Home Loans*, 946 F.Supp.2d 1236, 1248 (N.D.Ala. 2013) (same); *Monroe v. CitiMortgage, Inc.*, No. 8:07cv0066-SCB-TGW, 2007 WL 15601904, *2

(M.D.Fla. May 29, 2007) (same); *Dolan v. Fairbanks Capital Corp.*, 03cv3285, 2008 WL 4515932, *10 (E.D.N.Y., Sept. 30, 2008) (same).

The District Court's "plain meaning" conclusion is thus ill-founded. The meaning of the statute, considered as a whole, is not "plain," as recognized by the numerous decisions, beginning with *Kimber*, rejecting the District Court's interpretation.

Once it is recognized that at least a latent ambiguity[8] exists, consideration of the purpose of the FDCPA in resolving it is appropriate. *Serna v. Law Office of Joseph Onwuteaka, P.C.,* 732 F.3d 440, 445 (5th Cir. 2013) (issue was when claim for violation of FDCPA §1692i accrues; court held that because the term "bring such action" in FDCPA was ambiguous, "the FDCPA's remedial nature compels the conclusion that a violation includes both filing and notice"); *Zortman v. J. C. Christensen & Associates, Inc.*, 819 F.Supp.2d 874, 879  (D.Minn. 2011) (FDCPA's purpose considered in resolving issue of whether "communication" requires deliberate or purposive intent to convey information); *Marisco v. NCO Financial Systems, Inc.,* 946 F.Supp.2d 287, 292-93  (E.D.N.Y. 2013) (same); *Thompson v. Diversified Adjustment Service, Inc.*, No. H-12-922, 2013 WL 2973976 (S.D.Tex., July 31, 2013) (same); *Robinson v. Nationstar Mortgage, LLC*,

---

[8]    A latent ambiguity is one which becomes apparent when one applies language to the subject at hand.  The classic example is "I hereby sell you the cargo of the ship 'Peerless.'"  Semantically, it is plain enough.  But what if there are two ships of that name?  *Raffles v. Wichelhaus*, 2 H. & C. 906, 159 Eng.Rep. 375 (Ex. 1864).

39

2:12cv718, 2012 WL 5596421, *5 (S.D.Ohio, Nov. 15, 2012) (court found FDCPA ambiguous as to whether each successive debt collector had to give new §1692g notice, and resolved issue in favor of that interpretation which "best promotes the goal of protecting consumers"). Purposive interpretation of an ambiguous statute is appropriate. *Suesz v. Med-1 Solutions, LLC*, 757 F.3d 636, 646-49 (7th Cir. 2014) (en banc).

## V.    THE NINTH CIRCUIT *SCHLEGEL* DECISION IS INCORRECT

The only case to depart from the authorities discussed above is *Schlegel v. Wells Fargo Bank, N.A.*, 720 F.3d 1204 (9th Cir. 2013). *Schlegel* did not really present the issue before this Court because, as the Report and Recommendation noted, the debt in *Schlegel* had been rewritten and was not a debt in default. Without discussing or citing *Kimber* or any of the other decisions or administrative statements squarely finding that one who regularly purchases delinquent debts is a "debt collector" subject to the FDCPA, a Ninth Circuit panel summarily decided that there were no factual allegations "from which [the court] could plausibly infer that Wells Fargo regularly collects debts owed to someone other than Wells Fargo." (720 F.3d at 1209)

*Schlegel* inappropriately concluded that there was no ambiguity in §1692a(6) by ignoring the exemptions, with the comment that they are irrelevant. 720 F.3d at 1208 n. 3. However, statutes are to be construed as a whole, and courts "may consider Congress's use of a particular term elsewhere in the statute to determine

40

its proper meaning within the context of the statutory scheme." *Goodlin v. Medtronic, Inc.*, 167 F.3d 1367, 1374 (11th Cir. 1999).   Failing to do so brings about anomalous results, such as depriving Ford Motor Credit and other sales finance agencies of the exceptions from FDCPA coverage that they have been uniformly thought to have, and finding that Congress created exceptions from coverage that are both unnecessary and ineffective.

If  "owed or due another" means "prior to the time 'such person' 'obtained' the debt" in an exclusion, it is not reasonable to hold that it only means "at the present time" in the basic definition.  It is also unreasonable to construe the basic statutory language as not covering persons who are removed from the definition by exclusions; if the basic statutory language does not cover someone there is no need for an exclusion at all.  As noted above, the existence and language of an exclusion from a definition are indicative of the meaning and scope of the basic definition.

At the very least, such usage of language creates an ambiguity that requires consideration of the policies served by the FDCPA, which is what the *Kimber* court did.  That decision represents the consistent judicial and administrative construction of the FDCPA over the last 30 years  –  to include persons who purchase defaulted debts as a regular part of their business activities  –  during which time the FDCPA has been repeatedly amended by Congress without disturbing the construction originally adopted in *Kimber*.

41

## VI.    CONCLUSION

Capital One is a "debt collector" with respect to delinquent debts it purchases.  The District Court's construction of the FDCPA is contrary to the great weight of authority and the views of the agencies that administer the FDCPA, and creates serious underinclusivity and overinclusivity problems.  On the one hand, it "would create a loophole in the FDCPA. A big one."  *Reese v. Ellis, Painter, Ratterree & Adams, LLP*, 678 F.3d 1211, 1217-18 (11th Cir. 2012).   On the other hand, it deprives entities which no one considers within the FDCPA of the exceptions on which they depend.

A company which, as a regular part of its business, acquires ***billions*** in defaulted consumer debts and tries to collect those debts should be, and is, subject to the FDCPA, even if a majority of its business operations involve other matters.

The decision of the District Court should be reversed and the action remanded for further proceedings.


Respectfully submitted,


s/Daniel A. Edelman
Daniel A. Edelman


E. Talley Gray
3449-E Lawrence-Suwanee Road

42

Suwanee, GA 30024
(678) 428-4868
(800) 878-0429
tallegray@yahoo.com


Daniel A. Edelman
Cathleen M. Combs
Catherine A. Ceko
EDELMAN, COMBS, LATTURNER & GOODWIN, LLC
20 S. Clark Street, Suite 1500
Chicago, Illinois  60603
(312) 739-4200
(312) 419-0379 (FAX)
courtecl@edcombs.com

T:\28266\Appeal\Appellant's Opening Brief 11-14-14_Appeal.wpd

43

## CERTIFICATE OF SERVICE

I, Daniel A. Edelman, certify that on November 24, 2014, the preceding brief was filed with the Court electronically, and that a copy of the same was served upon counsel for all appellees, by operation of the Court's electronic filing system, and also by U.S. Mail, as follows:

Joshua Threadcraft
joshua.threadcraft@burr.com
BURR & FORMAN LLP
420 North 20th Street, Suite 3400
Birmingham, Alabama 35203
Telephone: (205) 251-3000
Facsimile: (205) 458-5100

Jennifer E. Ziemann
jziemann@burr.com
BURR & FORMAN LLP
171 17th Street, NW, Suite 1100
Atlanta, Georgia 30363
Telephone: (404) 815-3000
Facsimile: (404) 817-3244

s/Daniel A. Edelman
Daniel A. Edelman

## <u>TYPE VOLUME CERTIFICATION</u>

In accordance with Fed.R.App.P. 32(a)(7)(C), I, Daniel A. Edelman, certify that this brief meets the type-volume limitation of  Rule 32(a) in that it contains 10367 words according the word-counting feature of the WordPerfect 12 word processor application.

<u>s/Daniel A. Edelman</u>
Daniel A. Edelman